

CJ - 2024 - 7204

# IN THE DISTRICT COURT OF OKLAHOMA COUNTY
# STATE OF OKLAHOMA

| | |
|---|---|
| MEGAN PONTON, f/k/a MEGAN LAURO, individually and as Next Friend of M.L., a minor child,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF OKLAHOMA CITY ex rel. OKLAHOMA CITY POLICE DEPARTMENT; OFFICERS JOHN and/or JANE DOES of the OKLAHOMA CITY POLICE DEPARTMENT in their official and individual capacities; and MARY ELIZABETH IRENE, an individual,<br><br>    Defendant. | FILED IN DISTRICT COURT OKLAHOMA COUNTY<br><br>NOV 12 2024<br><br>Case No.: CJ-2024 RICK WARREN COURT CLERK<br>100 _____<br><br>**JURY TRIAL DEMANDED** |

## PETITION

COMES NOW the Megan Ponton, formerly known as Megan Lauro, individually and on behalf of her minor child, M.L. ("Plaintiff" or "Ponton"), and for her Petition and claims against Defendants alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Ponton and her minor child, M.L., are individuals residing in Saline County and are citizens of the State of Kansas.

2. Formerly Plaintiff and M.L. resided in Oklahoma County and were citizens of the State of Oklahoma.

3. Defendant, Oklahoma City Police Department ("OKCPD"), is a police department under the control and direction of Defendant, City of Oklahoma City ("OKC").

4. Defendants Officers John and/or Jane Does of the Oklahoma City Police Department are, upon information and belief, individuals residing in Oklahoma County and citizens of the

1

**EXHIBIT 2**

State of Oklahoma. Each is a current or former police officer with OKCPD, but their identities are unknown to Plaintiff at this time.

5. Defendant Mary Elizabeth Irene ("Irene") is an individual who, upon information and belief, resides in Oklahoma County and is a citizen of the State of Oklahoma.

6. The acts and omissions complained of herein occurred in Oklahoma and Lincoln Counties in the State of Oklahoma.

7. Jurisdiction over the parties and venue in this Court are proper.

## OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT

8. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

9. In accordance with the Government Tort Claims Act ("GTCA"), Plaintiff provided notice to OKC of her claims within one (1) year of their occurrence.

10. OKC acknowledged it received Plaintiff's notice on June 14, 2024.

11. No further response was made by OKC and, therefore, Plaintiff's claims were deemed denied by operation of law under the GTCA on September 12, 2024.

12. Pursuant to the GTCA, this original petition was timely filed within one hundred eighty (180) days of the constructive denial of Plaintiff's claims.

## FACTUAL BACKGROUND

13. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

Andrew Lauro and Defendant OKCPD

14. Plaintiff was formerly married to Andrew Lauro ("Lauro") and he is the biological father of M.L.

15. In January 2021, Ponton and Lauro moved with M.L. to Oklahoma City where they were stationed for their FBI Field Office Assignments.

16. At all times relevant to Plaintiff's Petition, Lauro was suffering from severe alcoholism.

17. On or around January 2021, Lauro crashed Plaintiff's vehicle while extremely intoxicated but claimed no recollection of the event.

18. On or around May 26, 2021, Ponton filed for legal separation from Lauro; however, the couple attempted unsuccessfully to reconcile over the following several months.

19. In or around February 2022, Lauro was discovered intoxicated and unresponsive in his running vehicle by the security guard at his apartment complex.

20. Lauro could not be aroused and OKCPD was called.

21. Upon information and belief, officers with OKCPD arrived, confiscated Lauro's badge and firearm, and then briefly detained him in handcuffs in the rear of a police cruiser.

22. However, Lauro was not arrested or charged with any crime by OKCPD on that occasion. Apparently, his firearm and badge were returned to him that night by OKCP officers.

23. Upon information and belief, OKCPD's election not to arrest or charge Lauro was part of a "professional courtesy policy" commonly extended among law enforcement.

24. Generally, a "professional courtesy policy" refers to an informal practice wherein law enforcement officers extend certain courtesies or leniency to fellow officers and their families and close members of the law enforcement community.

25. On or around March 9, 2022, Plaintiff and Lauro's divorce was finalized, and they entered into a custody and visitation arrangement with respect to their minor child, M.L.

26. Shortly thereafter, Lauro began frequenting bars and strip clubs prompting Plaintiff's concerns that the minor child was not safe while in Lauro's care due to his likely alcohol abuse.

27. During and after this time, Plaintiff contacted OKCPD numerous times expressing her concerns about the safety of the minor child.

28. On or about April 26, 2022, Plaintiff Ponton spoke with Sergeant Russell of the OKCPD who admitted he was personally familiar with Lauro's vehicle as a result of traffic stops with the intoxicated Lauro.

29. Sergeant Russell assured Ponton that Lauro's tag would be "flagged" so that he'd be held accountable the next time he was pulled over driving while intoxicated.

Defendant Irene's Takes M.L. on a Police Chase

30. On or around February 2022, Lauro began a romantic relationship with Defendant Irene.

31. On or about July 9, 2022, Lauro and Defendant Irene threw a house party where they both excessively consumed alcohol and got into a heated altercation; the minor child M.L. was present to witness the altercation.

32. Upon returning from Lauro's home, M.L. disclosed to Plaintiff that she observed blood on Lauro's floor and wall.

33. As a result of these and other incidents, on or about August 8, 2022, the Guardian Ad Litem for M.L. in the child custody case recommended to the Court that Defendant Irene not be left with the minor child unsupervised.

34. In the summer of 2023, Plaintiff and minor child M.L. relocated from Oklahoma City to Kansas; M.L. was slated visitation every other week with Lauro.

35. Shortly thereafter, late into the night on July 22, 2023, Lauro was arrested for driving under the influence (DUI)/actual physical control (APC) and child endangerment by DUI.

36. OKCPD officers observed an intoxicated Lauro operating his Ford F-150 truck with five-year-old M.L. in the passenger seat.

37. At some point, Defendant Irene appeared at the scene of Lauro's arrest.

38. OKCPD officers threatened to arrest Irene and indicated they believed her to be under the influence.

39. Yet despite Irene's apparent condition, rather than contact the minor child's biological mother, Plaintiff Ponton, to retrieve the child and ensure her safety, OKCPD elected to release M.L. to Irene.

40. Neither OKCPD or its officers, Defendant Irene or Lauro notified Ponton about Lauro's arrest or the whereabouts of her five-year-old daughter, M.L.

41. Just hours later, on July 23, 2023, Defendant Irene was barreling recklessly down the Turner Turnpike with M.L. in the back seat.

42. An Oklahoma Highway Patrol ("OHP") officer observed Irene's vehicle swerving between lanes and attempted to pull her over; a high-speed chase ensued.

43. The OHP officer reported that Irene reached speeds over 100 miles per hour and continued veering between lanes and onto the shoulder of the turnpike.

44. Then, according to the OHP officer, Irene suddenly made a sharp turn through safety barricades and began driving northbound on a southbound single lane ramp off the Turner Turnpike.

45. Finally, Irene made an abrupt right turn in the opposite direction and rammed her vehicle into the turnpike cable barrier; she then continued to ram her vehicle against the barrier until she complied with OHP officers' orders to exit her vehicle.

46. When Irene exited the vehicle OHP officers observed that she was not wearing shoes, her eyes were bloodshot, and she was unresponsive to questions and commands.

47. A bottle of Xanax was found in the passenger side seat of Irene's vehicle, and she admitted to paramedics that she had taken the pills but could not remember how many.

48. In the meantime, Plaintiff Ponton was waiting to pick M.L. up from the visit at the agreed upon place and time.

49. While awaiting Lauro and M.L.'s arrival, Plaintiff Ponton received a telephone call from an OHP officer advising that M.L. would not be arriving at the appointed time and place.

50. The OHP officer advised Plaintiff that M.L. was in Defendant Irene's vehicle when Irene refused to pull over, engaged in a police chase, and barreled towards oncoming traffic on the interstate.

51. The OHP officer further advised Ponton that Irene was under the influence of Xanax.

52. Plaintiff then met an OHP officer to reunited with M.L. wherein she was advised Lauro was booked into the Oklahoma County jail on DUI and felony child endangerment charges.

53. Defendant Irene was charged with eluding a police officer and driving with a suspended license.

54. M.L. required medical treatment as a result of injuries sustained in the police chase and subsequent crash while in the care of Irene.

## DEFENDANT IRENE – NEGLIGENCE/GROSS NEGLIGENCE

55. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

56. Defendant Irene, while driving with minor child, M.L. and at all relevant times, had a duty to devote her full time and attention to driving, to avoid distractions and hazards, and to observe and obey the rules of the road especially with regard to operating her vehicle while under the influence of intoxicating substances.

57. Defendant Irene breached this duty when she negligently failed to operate her vehicle in a sober and safe manner and collided with the cable barrier off the turnpike.

58. Defendant Irene's actions were negligently, grossly negligent or in reckless disregard of her duties to her passengers and other drivers on the roadway.

59. As a result of the negligence and gross negligence of Defendant Irene, minor child M.L. suffered physical and mental injuries which required medical treatment.

60. As a result of the negligence and gross negligence of Defendant Irene, Plaintiff has incurred on behalf of M.L. medical expenses, travel expenses and other costs incidental to M.L.'s medical treatment.

61. As a result of the negligence and gross negligence of Defendant Irene, minor child M.L. has suffered past, present and future mental anguish; past physical pain and suffering; lost quality of life and substantial inconvenience relative to her injuries and necessary medical treatment.

62. Plaintiff alleges physical, mental and emotional injury as a result of Defendant's actions in an amount to be determined by a jury.

63. As a result of the conduct of Defendant Irene, Plaintiff has been injured in a sum in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

64. The actions of Defendant Irene were willful or deliberately indifferent, thereby entitling Plaintiff to punitive damages.

## DEFENDANT IRENE – NEGLIGENCE PER SE

65. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

66. Defendant Irene violated 47 O.S. 11-901(A) by driving in a careless and wanton manner without regard for the safety of other persons or their property.

67. Defendant Irene violated 47 O.S. 11-901(b) in failing to devote her full time and attention to driving.

68. Defendant Irene violated 47 O.S. 11-801(A) for her failure to travel at safe speeds while having regard to the traffic, surface, and width of the highway.

69. Defendant Irene violated 21 O.S. 540(A) and 540(B) by attempting to elude police officers and disregarding roadblocks set up by law enforcement.

70. Defendant Irene violated 47 O.S. 6-303(B)(2) by operating her motor vehicle with a suspended driver's license—Irene's second offense.

71. Defendant violated 47 O.S. 11-905(A) by causing an accident resulting in personal injury to M.L. while driving with a suspended license.

72. Violation of Oklahoma statutes constitutes negligence per se.

73. Defendant Irene was negligent per se for violating Oklahoma law regarding reckless driving, failing to devote full time and attention to driving, failing to maintain a safe speed and distance, eluding police, and for causing the above-described accident, property damage and injuries.

74. Defendant Irene exhibited a reckless disregard for the safety of minor child M.L. and others on the roadway.

75. Plaintiff alleges physical, mental and emotional injury as a result of Defendant's actions in an amount to be determined by a jury.

76. As a direct and proximate result of the conduct of Defendant Irene, Plaintiff has been injured in a sum in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

77. The actions of Defendant Irene were willful or deliberately indifferent, thereby entitling Plaintiff to punitive damages.

## **DEFENDANT OKCPD – U.S.C. §1983**

78. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

79. At all material times, Defendant OKCPD was acting under the color of state law.

80. At all material times, OKCPD employed Defendant Officers John and/or Jane Does.

81. The Defendant Officers were acting as employees, servants, or agents for the OKCPD within the scope of their employment at all relevant times.

82. OKCPD and the Defendant Officers, acting under color of statute, regulation, custom or law of the State of Oklahoma, caused the Plaintiff and M.L. to be subjected to the deprivation of their rights, privileges and immunities secured by the Fourth and Fourteenth Amendment of the Constitution of the United States and its laws in violation of 42 U.S.C. §1983.

83. The actions of these Defendants by the government's failure to adopt proper and constitutional policies and customs created an environment wherein its employees could freely and without fear of discipline fail to respond to situations such as Plaintiff's. The violations of the policies by these government Defendants are so prevalent that they amount to a custom or practice that has been ratified by condoning the same.

84. At all relevant times, one or more of the supervisors and/or policymakers of these government Defendants promulgated, propagated, employed, and/or organized illegal customs and practices.

85. The supervisors and/or policymakers of these government Defendants had a duty and responsibility to train and supervise their employees, agents and representative to protect the constitutional rights of citizens such as Plaintiffs.

86. The supervisors and/or policymakers knew and disregarded or otherwise did not follow their own policy, rules and regulations and willfully and intentionally refused to undertake the necessary remedial efforts to protect M.L.

87. The failure of the supervisors and/or policymakers to adequately and properly train employees, agents and representatives amount to a deliberate indifference to the rights of persons such as the Plaintiffs.

88. The violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments both directly and proximately caused their harm and damages.

89. Under the doctrines of *respondeat superior and* agency, Defendant OKCPD is responsible for any damages Plaintiff incurred as a result of the negligent acts or omissions and intentional acts of its employees, agents, and servants.

90. OKCPD had direct knowledge of its officers' failures to take action against Lauro for his reckless and unlawful conduct, including but not limited to operating a motor vehicle while under the influence.

91. OKCPD made a deliberate and/or conscious decision to disregard the known risk of harm that would result from permitting Lauro to conduct himself unlawfully and tacitly authorized the same.

92. OKCPD failed to properly train and/or supervise Officers John and/or Jane Does.

93. OKCPD owed to Plaintiff a duty of care and violated that duty by certain acts and omissions including but not limited to negligent hiring, training and/or supervision of its officers.

94. Upon information and belief, OKCPD concealed, erased and/or destroyed body camera footage showing an intoxicated Lauro asleep behind the wheel of his vehicle which was taken on or about January 2022.

95. OKCPD acted deliberately, intentionally, recklessly, in conscious disregard, and in gross indifference to the Plaintiffs' federally protected rights.

96. OKCPD, by and through its agents and employees, exhibited evil motive and intent and/or demonstrated reckless or callous indifference to Plaintiffs' federally protected rights entitling them to punitive damages.

97. Plaintiff alleges physical, mental and emotional injury as a result of Defendant's actions in an amount to be determined by a jury.

98. As a direct and proximate cause of the acts and omissions described herein, Plaintiff has been injured in a sum in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

99. The actions of Defendant OKCD were willful or deliberately indifferent, thereby entitling Plaintiff to punitive damages.

### DEFENDANTS OFFICERS JOHN AND/OR JANE DOE--U.S.C. §1983

100. Plaintiff incorporates all previous paragraphs as if set forth fully herein.

101. At all material times, Defendant Officers John and/or Jane Does were acting under the color of state law, as agents of the OKCPD and within the scope of their employment and authority as duly certified law enforcement officers of the OKCPD.

102. The Defendant Officers, in their individual capacities, personally participated in or condoned Lauro's unlawful conduct.

103. The Defendant Officers, acting under color of state law, caused Plaintiffs to be subjected to the deprivation of their rights, privileges, and immunities secured by the U.S. Constitution.

104. The acts of the Defendant Officers were reckless, wanton, malicious, knowing, and/or intentional in violation of the Plaintiffs' rights and render these Defendants liable in an action at law, suit in equity, or other proper proceedings for redress of the following: refusing to property train, supervise and monitor its personnel, failing to protect M.L., and other failures to be revealed during discovery.

105. Officers John and/or Jane Does failed to take action against Lauro for his reckless and unlawful conduct, including but not limited to operating a motor vehicle while under the influence.

106. Officers John and/or Jane Doe made a deliberate and/or conscious decision to disregard the known risk of harm that would result from permitting Lauro to conduct himself unlawfully and tacitly authorized the same.

107. The Defendant Officers owed to Plaintiff a duty of care and violated that duty by certain acts and omissions including but not limited to failing to carry out their duties with respect to Lauro's unlawful acts.

108. Upon information and belief, Defendant Officers John and/or Jane Doe concealed, erased and/or destroyed body camera footage showing an intoxicated Lauro asleep behind the wheel of his vehicle which was taken on or about January 2022.

109. The Defendant Officers' deliberate indifference to Plaintiffs' rights was violative of the Fourteenth Amendment and thus violated 42 U.S.C. §1983.

110. Plaintiff alleges physical, mental and emotional injury as a result of Defendants' actions in an amount to be determined by a jury.

111. The Defendant Officers exhibited evil motive and intent and/or demonstrated reckless or callous indifference to Plaintiffs' federally protected rights entitling them to punitive damages.

112. The actions of Defendant Officers was with knowledge, reckless, malicious and was otherwise of such a degree as to deprive them of any protection under the Oklahoma Governmental Tort Claims Act.

113. As a direct and proximate cause of the acts and omissions described herein, Plaintiff has been injured in a sum in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

114. The actions of the Defendant Officers were willful or deliberately indifferent, thereby entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) along with punitive damages as determined by a jury, plus an award for attorney fees and costs and all other relief the Court deems just and proper.

Respectfully submitted,

*Milly F. Daniels*
Milly Daniels, OBA #31531
MD Law, PLLC
1435 N. Rockwell Avenue
Oklahoma City, OK 73127
Tel. (405) 768-2570
milly@millydanielslaw.com
carmen@millydanielslaw.com

**ATTORNEY'S LIEN CLAIMED**
**DEMAND FOR JURY TRIAL**